# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SAM MIZRAHI,<br><br>　　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　　　　　　　Defendants. | Case No. 2:12-cv-00285-KJD-GWF<br><br>**FINDINGS AND RECOMMENDATIONS** |

This case involves judicial review of administrative action by the Commissioner of Social Security denying Plaintiff Sam Mizrahi's ("Plaintiff") claim for disability benefits under Title II of the Social Security Act. The Court granted Plaintiff's Application to Proceed in Forma Pauperis (#1) on June 27, 2012. *See Doc. #4*. Plaintiff's Complaint (#5) was filed July 9, 2012. Defendant's Answer (#12) was filed September 25, 2012, along with a Notice of Filing the Administrative Record (#12-1). This matter has been submitted to the undersigned United States Magistrate Judge for Findings and Recommendations on Plaintiff's Motion for Summary Judgment and Alternative Motion for Remand (#17), filed on October 24, 2012; Defendant's Response (#17), filed on November 21, 2012; Defendant's Cross-Motion to Affirm (#19), filed on November 26, 2012; and Plaintiff's Reply (#20), filed on December 10, 2012.

Plaintiff seeks judicial review of the Administrative Law Judge's ("ALJ") decision dated March 28, 2011. (A.R. 18-29) The issue before the Court is whether the Plaintiff was disabled from his alleged onset date of July 1, 2008. (AR 144).

. . .

. . .

# BACKGROUND

### A. Procedural History

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplement security income on May 7, 2009. (AR 144-157). The Commissioner denied Plaintiff's claims at the initial determination on September 14, 2009. (AR 89-92). Plaintiff filed a request for reconsideration of that determination on October 1, 2009. (AR 94). The Commissioner denied reconsideration on December 22, 2009. (AR 95-100). Plaintiff requested an appeal before an Administrative Law Judge ("ALJ") on January 5, 2010. (AR 101-02). The ALJ conducted a hearing on March 15, 2011. (AR 36-84). Vocational Expert Eric Davis ("Davis") testified at the hearing. (AR 82-83). The ALJ issued an unfavorable decision on March 28, 2011. (AR 18-34). Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a report of findings and recommendations under 28 U.S.C. §§ 636 (b)(1)(B) and (C).

### B. Factual Background

Both Plaintiff and Defendant stipulate that the ALJ sufficiently summarized the medical and testimonial evidence of record. Plaintiff was born on October 25, 1949. (AR 152). The bases for Plaintiff's disability claims are spine, depressive, and anxiety disorders. (AR 40). Until April of 2008, Plaintiff was employed as a telemarketer. (AR 53). Plaintiff obtained employment for approximately six weeks as a telemarketer in the beginning of 2011, but left due to an inability to cooperate with coworkers, allegedly due to his psychological issues. (A.R. 40-41).

In 2008, Plaintiff was involved in a car accident that resulted in back injuries. (AR 53, 253). Specifically, Plaintiff was diagnosed with chronic low back pain, degenerative disc disease of the lumbar and cervical spine, lumbar facet arthropathy, and osteoarthritis. (AR 448-451). Plaintiff testified at length at the ALJ hearing that his sedentary capabilities are negatively affected by the back injuries. (*See, e.g.,* AR 60) (Plaintiff can only sit for a few hours before experiencing severe pain). Plaintiff stated that after three hours of sitting, his pain can only be alleviated by lying down. (AR 60). Plaintiff further testified that he can only stand pain-free for twenty minutes. (AR 61). Plaintiff explained he could only lift about two gallons of milk, once a day, without painful repercussions. *Id.*

Plaintiff also testified at length about the impact his claimed psychological maladies have had on his employment. Plaintiff asserts this issue first arose in 2008, when he suffered a "psychotic episode" that ultimately ended his self-run telemarketing business selling advertisements for a website. (AR 53-55). Plaintiff also testified that during a 2011 telemarketing job with Kelly Products, he could not "keep calls in order," and "started to become confused." Plaintiff explained that he was "not able to function" in the position, and agreed with the employer to leave to "get stabilized." (AR 42-43). Plaintiff further explained that his inability to function in office settings results from his inability to "get along with the staff," because he "feel[s] like they are plotting against [him]." (AR 62). When asked why he believed office staffs plot against him, Plaintiff responded, "Because they probably are[,] like they're trying to make me look bad." *Id.* Plaintiff also claimed that whenever he is in a crowded area, he thinks people are talking about him. (AR 72). Regarding Plaintiff's inability to function with staff, the following examination occurred between the ALJ and Vocational Expert Davis:

> ALJ: Well, assuming no physical limitations and no mental health limitations, is there anything in the record that tells you that he's unable to perform this past relevant work?
>
> Davis: No, Your Honor.
>
> ALJ: If he was limited to only occasional contact with co-workers, would he be able to do his past relevant work?
>
> Davis: I would say yes, Your Honor, because probably in that setting you're in [...] a cubicle, so you're just on the phone, and you don't need to interact with co-workers maybe even at all.

(AR 83).

Plaintiff argues that the ALJ's residual functional capacity ("RFC") should have included a limitation regarding interaction with others based on the opinion of Dr. Robert W. Wildman, Ph.D. (AR 337-342). The Nevada Bureau of Disability Adjudication referred Plaintiff to Dr. Wildman for a consultative psychological examination in conjunction with his application for disability benefits. Dr. Wildman conducted the examination on August 31, 2009, and noted that Plaintiff participated with "evasiveness, anxiety, and long response latency." (AR 338). Dr. Wildman further noted:

. . .

. . .

. . .

> [Plaintiff] is complaining of difficulty concentrating and with his memory. He checked the blank about seeing or hearing things that are not there, and told me in a very vague fashion that he was not sure whether he was hearing the voice of God or demons[.] He told me that he started to hear these voices a little over a year ago[,] a very unusual period in life to experience hallucinations for the first time.

(AR 337). Dr. Wildman concluded that Plaintiff's claims of hallucinations are inconsistent with the kind of reports that manic patients typically present. *Id.* Dr. Wildman stated he does not believe Plaintiff "suffers from a genuine mental disorder of such severity that it degrades his contact with reality to a psychotic extent." (AR 39).

Dr. Wildman also examined Plaintiff's digit span, memory, fund of information, vocabulary, comprehension, and knowledge of proverbs. (AR 340-41). Dr. Wildman ultimately concluded as follows:

> In summary, I do not regard any of [Plaintiff's] complaints or symptomatology in my area as having any credibility whatever. I believe that if [Plaintiff] were to put forth a maximum effort, he would be capable of understanding, remembering and carrying out a wide array of complex instructions. His only difficulty in relating with coworkers, supervisors and the public relates to his antisocial orientation. His problems in maintaining concentration and attention are, at most, mild[.]"

(AR 341). After the consultative examination, Plaintiff began regular treatment at Southern Nevada Adult Mental Health Service. (AR 361). Followup appointments were routine, and Plaintiff consistently reported improved mood and less depression and anxiety. (*See, e.g.,* AR 370, 399, 430, 477). Non-examining State agency psychologists Pastora Roldan, Ph.D. and Jocelyn Fuller Ph.D. both found insufficient evidence of a severe mental impairment, in part due to malingering and exaggeration of symptoms, on July 1, 2008, and December 9, 2009, respectively. (AR 347, 377).

C. **Administrative Law Judge's September 20, 2010 Decision**

The Administrative Law Judge issued his decision on March 28, 2011. The ALJ found that Plaintiff was not disabled, because Plaintiff possessed sufficient RFC to perform past relevant work. In reaching this conclusion, the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-(f). First, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 1, 2008. (AR 23). Second, the ALJ found Plaintiff had severe impairments in the form of lower back pain, degenerative disc disease of the lumbar and cervical spine, lumbar facet

arthropathy, and osteoarthritis. *Id.* Third, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appx. 1 ("Listing of Impairments"). (AR 26). Fourth, the ALJ determined that Plaintiff has the full residual functional capacity to perform the full range of sedentary work, including Plaintiff's past work as a telemarketer. Accordingly, Plaintiff was not found to be disabled at Step Four, and the ALJ did not reach step five.

In his Step Two analysis, the ALJ found Plaintiff's back impairments to be severe because they cause more than a minimal effect on Plaintiff's ability to perform basic work activities. The ALJ did not find Plaintiff's mental impairments to be severe, however. In making that finding, the ALJ considered the four broad functional areas set forth in section 12.00C of the Listing of Impairments ("Paragraph B criteria"): (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation. (AR 24). The ALJ found negligible limitations in areas (1) through (3) largely based on the opinion of Dr. Wildman, who, as discussed above, did not find Plaintiff credible. *Id.* The ALJ found no limitations in area (4) because the record contains no indication of any exacerbations or temporary increases in symptoms, no significant alteration in medication, or evidence showing a need for more structured psychological support. *Id.* Although Plaintiff testified he had been hospitalized for mental health issues five times in the past, no records were submitted as to this treatment. *Id.* The ALJ further noted that only after the August 31, 2009 consultative examination with Dr. Wildman did Plaintiff begin seeking regular mental health treatment. *Id.* The ALJ therefore concluded that Plaintiff's medically determinable mental impairments cause mild limitations in functions (1), (2), and (3), and no limitations in area (4), and that the mental impairments are not severe. (AR 25).

The ALJ engaged in Step Four analysis because Plaintiff's severe impairments did not appear on the List of Impairments. In his Step Four analysis, the ALJ evaluated the "intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] functioning." The ALJ stated:

> After careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements

5

> concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 27). In support of this conclusion, the ALJ reiterated the mild limitations of Plaintiff's mental impairments. The ALJ further noted that the objective medical evidence (*see* AR 410-14) demonstrates only mild degenerative disc disease of the lumbar spine. Although Plaintiff reported no benefit from chiropractic treatment, the ALJ continued, "there is no record of [such treatment] following the initial evaluation." *Id.* The ALJ further noted that records show (*see, e.g.,* AR 416) that Plaintiff only attended one physical therapy session, and missed or cancelled at least four others. *Id.* Finally, the ALJ relied on Vocational Expert Davis' opinion that Plaintiff's claimed impairments would not limit his ability to perform his past relevant work as a telemarketer.

## DISCUSSION

### I. Standard of Review

A federal court's review of an ALJ's decision is limited to determining only (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

1          It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin*, 654 F.2d at 635 (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## II.     Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

(a) he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

(b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Batson*, 157 F.3d at 721.

### III. Analysis of the Plaintiff's Alleged Disability

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The claimant carries the burden with respect to steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). Under the first step, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b). If so, the claimant is not considered disabled. *Id.* § 404.1520(b). Second, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c). If the impairment is not severe, the claimant is not considered disabled. *Id*. § 404.152(c). Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1. The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment. *Id.* § 404.1520(d). If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work. *Id*. § 416.920(e). If the claimant can engage in past relevant work, then no disability exists. *Id.* § 404.1520(e). If the claimant cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work. *Id.* § 404.1520(f). If the Secretary cannot meet his or her burden, the claimant is entitled to disability benefits. *Id.* § 404.1520(a).

Plaintiff challenges two aspects of the ALJ's decision. The issues before the Court are (1) whether the ALJ failed to make complete findings at Step Two as to the severity of all of Plaintiff's medically determinable impairments; (2) whether the ALJ erred in determining Plaintiff's RFC allowed for engagement in Plaintiff's past relevant work.

### A. The ALJ did not Err at Step Two or Three of the Analysis.

In Step Two, the ALJ determines whether the claimant's impairment is severe. 20 C.F.R. § 476.920(c). "An impairment is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The severity inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. An impairment can be found "not severe only if the evidence establishes a slight abnormality that has no more than a

minimal effect on an individual's ability to work." *Id.* (citations omitted). Even if the ALJ errs in neglecting to list an impairment as "severe" at Step Two, such an error is harmless if the ALJ considers the limitations posed by the impairment at Step Four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ's finding that Plaintiff's mental impairments were not severe is supported by substantial evidence. Dr. Wildman, the examining psychologist, concluded that Plaintiff's mental impairments impose, at best, mild limitations, and that Plaintiff's symptomatology had no credibility. (AR 341). Furthermore, even if Plaintiff's mental impairments are severe, under *Lewis*, above, the ALJ considered any limitations in determining Plaintiff's RFC at Step Four.

### B.  The ALJ did not Err at Step Four of the Analysis.

In Step Four, the ALJ determines if the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. 416.920(e). The opinion of an examining physician is entitled to great weight because the physician has had the opportunity to observe the patient and assess the patient's impairments. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Moreover, an examining physician's opinion alone can constitute substantial evidence in granting or denying a claim. *See, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th cir. 2001). The more consistent a medical opinion is with the record as a whole, the more weight it should be given. *See* 20 C.F.R. § 404.1527(d)(4).

Plaintiff argues that the ALJ did not give sufficient weight to Dr. Wildman's opinions as examining physician, and erred by finding Plaintiff could perform his past relevant work as a telemarketer despite his alleged mental impairments. The ALJ afforded great weight to Dr. Wildman's opinion. (*See, e.g.,* AR 25-26) ("Regarding Dr. Wildman's opinion, discussed above, I have given the opinion great weight because it is supported by and consistent with the objective medical evidence, the DDS state psychological consultants, and the record as a whole.") Dr. Wildman unambiguously opined that Plaintiff's mental impairment claims were devoid of "any credibility." Dr. Wildman concluded that Plaintiff "needs mental health treatment, but not for [the claimed disorders], but, rather, so that he could be confronted within a supportive context with the absolute improbability of the symptomatic picture he is presenting[.]" (AR 342). That Drs. Roldan and Fuller agree with Dr. Wildman's diagnosis further supports the ALJ's finding that Plaintiff has the RFC to engage in his prior work as a

telemarketer.

## CONCLUSION

Having reviewed, considered and weighed both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the Court finds the ALJ's decision is supported by substantial evidence, and that the ALJ did not err as a matter of law in concluding that Plaintiff is not disabled. Accordingly,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (#17) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion to Affirm (#19) be **granted**.

## NOTICE

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. Appeals may been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). Failure to file objections within the specified time or failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983)."the language of NRS 116.3116(

DATED this 15th day of January, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge